UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:07-00009 |
| ) | JUDGE ECHOLS |
| LADON JACOBY ERVIN, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM

Pending before the Court is Defendant Ladon Ervin's Motion to Suppress Evidence (Docket Entry No. 21) to which the Government responded in opposition (Docket Entry No. 22). The Court held a suppression hearing on July 5, 2007.

### I. FINDINGS OF FACT

At approximately 12:00 a.m. on November 22, 2006, Nashville Metropolitan Police Officers Mark Anderson and Kevin Akin were on patrol in the vicinity of Harding Place and I-24 in Nashville. Officer Anderson was dressed in uniform and driving a new marked patrol car that had been assigned to him about seven months earlier. The patrol car was equipped with a calibrated and certified speedometer installed by the manufacturer, but it was not equipped with radar. Officer Akin was driving an unmarked police vehicle that was not equipped with blue lights or a calibrated and certified speedometer.

As Officer Akin approached the intersection of Tampa and Harding Place, he noticed an older model Maroon Chevy Impala which drove eastbound past him on Harding Place. The Impala appeared to

1

be going faster than the posted 45 mile-per-hour speed limit on Harding Place. Officer Akin thought he recognized the car as one previously described to him by Officer Anderson, who had encountered an older model Maroon Chevy Impala a week earlier on a "shots fired" call. During the earlier incident, as Officer Anderson followed the Impala, the driver sped away and Officer Anderson was able to obtain only the first three digits of the license plate number. Officer Akin pulled onto Harding Place traveling eastbound to follow the Impala. He radioed to Officer Anderson that he spotted a Maroon Chevy Impala and the car was in front of him. Officer Akin read the first three numbers of the Impala's license plate and Officer Anderson was confident it was the same Maroon Chevy Impala. Officer Anderson was also traveling eastbound on Harding Place and was approximately one-half mile behind Officer Akin.

Officer Anderson eventually caught up with Officer Akin and the Impala. As the three vehicles approached the interchange of Harding Place and I-24, the Impala turned left onto I-24 westbound, and the officers followed. Because the car had tinted windows, Officer Anderson could not see inside the vehicle. The Impala accelerated and moved to lane two of the four-lane interstate. Lane two is the second lane from the median. Officer Akin moved to lane one, the lane nearest the median, and followed the Impala until Officer Anderson passed a slower-moving car he had used for cover and moved in behind the Impala in lane two. Officer Akin

2

dropped back and Officer Anderson followed the Impala, remaining three to four car lengths behind it.

Because Officer Anderson did not have any radar equipment in his patrol car, he relied on the new patrol car's speedometer, which had been calibrated and certified in March or April of 2006 when it left the manufacturer's control, to estimate the speed of the Impala. Officer Anderson has not calibrated the speedometer since the car was assigned to him, and he does not keep any calibration records on the speedometer. The Court finds that the speedometer was reliable.

Using the patrol car speedometer, Officer Anderson paced the Impala's speed at 65 miles per hour, which was the posted speed limit for that stretch of highway. The officers followed the Impala for a mile to the Briley Parkway and I-24 interchange, where the posted speed limit drops from 65 to 55 miles per hour. The Impala did not slow down, but continued traveling at 65 miles per hour. The officers followed the Impala two more miles to the Murfreesboro exit on I-24. The car continued to travel at 65 miles per hour in the 55-mile-per-hour speed zone.

Due to the speeding violation, Officer Anderson activated the police car's blue lights and pulled the Impala over at the Murfreesboro Road exit. Officer Anderson approached the Impala on the driver's side and Officer Akin approached the Impala on the passenger side. As the officers walked up to the car, both front windows lowered. The Defendant was sitting in the driver's seat. Shandria Frame, the mother of Defendant's children, was sitting in

3

the front passenger seat. Susan Wood, a friend of Shandria's, was sitting in the back right passenger seat.

Although both passengers in the Impala testified at the suppression hearing that they did not believe the Defendant was speeding at 65 miles per hour in a 55-mile-per-hour zone on I-24, the Court credits the testimony of Officer Anderson over the testimony of the two passengers concerning the car's speed on I-24. The Court credits Officer Anderson's testimony because he has training and experience in estimating the speed of moving vehicles and making traffic stops. He paced the Impala for three miles using a new, calibrated and certified speedometer in the patrol car. In the first mile of travel, Officer Anderson testified that the Impala was moving at the speed limit of 65 miles per hour; however, the Impala did not slow to adjust to a drop in the speed limit to 55 near Briley Parkway. Officer Anderson paced the car for an additional two miles beyond that point, and the Impala consistently moved at 65 miles per hour, ten miles per hour over the legal speed limit.

The Court does not adopt the testimony of Shandria Frame and Susan Wood because these witnesses are naturally biased in favor of the Defendant and they formulated their testimony to advance the Defendant's self-interest. Ms. Frame testified that the Defendant is not a fast driver and she calls him "slow driving Mr. Daisy." While the Defendant may be a slow driver under other circumstances, he was not driving slowly on I-24 on the date in question. She further testified that when Officer Anderson activated the blue

4

lights on his patrol car, she automatically looked at the Impala's speedometer and the car was not traveling 65 miles per hour, but rather was traveling between 50 and 55 miles per hour. The Court finds that Ms. Frame's observation that the Impala was going between 50 and 55 miles per hour is not inconsistent with the Impala slowing down to pull over in response to Officer Anderson's blue lights. Her testimony does not resolve accurately the speed of the Impala during the seconds just before Officer Anderson activated the blue lights.

Further, Ms. Wood was sitting in the right back passenger seat and she admitted on cross-examination that she could not see the Impala's speedometer. She testified only that she felt the car was not moving at 65 miles per hour, which is not as credible an observation as Officer Anderson's estimate of the car's speed determined by use of a calibrated speedometer.

The Court finds that the testimony of the passengers is not as credible as the testimony of Officer Anderson. The Court finds that the Defendant, who later was determined to be driving the Impala, was speeding on I-24 at 65 miles per hour when the posted speed limit was 55 miles per hour.

Upon walking up to the driver's side door of the Impala, Officer Anderson identified himself and informed the Defendant that he was stopped for speeding 65 miles per hour in a 55-mile-per-hour zone and asked for the Defendant's driver's license, registration, and proof of insurance. Defendant sat in a reclined position in the driver's seat and wore low, baggy pants. Defendant did not

5

produce a driver's license, but looked in the glovebox and furtively moved his hands in and out of his pockets. Officer Anderson saw the top of a Tennessee identification card in Defendant's pocket and asked the Defendant if he had a driver's license. Defendant responded that he did not. In the meantime, Ms. Frame, the owner of the Impala, searched the glovebox and produced the registration and proof of insurance to Officer Akin. He told her to hand the papers over to Officer Anderson.

    Officer Anderson asked the Defendant to step out of the car to be placed into custody for driving without a driver's license. As the Defendant stepped out of the car, he handed Officer Anderson the registration and insurance papers. Officer Anderson took the papers and tried to place the Defendant in handcuffs. As he did so, the Defendant began to run toward the front of the car. Officer Anderson grabbed Defendant's hood and pulled him back. The Defendant twisted around and struck Officer Anderson in the face with his elbow, knocking him off balance, and both men fell backwards to the ground. Officer Anderson struck his head on the pavement and suffered a mild concussion. Officers Anderson and Akin fought with the Defendant to gain control over him and handcuff him pursuant to arrest. In the process, Defendant suffered a cut over his eye. During the melee, the officers repeatedly instructed the Defendant to stop resisting arrest and be handcuffed. During the scuffle, a loaded Ruger .45 caliber pistol fell from Defendant's waistband and hit the pavement. A third police officer who had arrived on the scene retrieved the weapon

and secured it.  Defendant was taken into custody and indicted on one count of being a felon in possession of a firearm.

## II. CONCLUSIONS OF LAW

A temporary detention of individuals by police during a traffic stop, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment.  Whren v. United States, 517 U.S. 806, 810 (1996).  An officer may lawfully stop a vehicle, however, so long as he has probable cause to believe that a traffic violation occurred, even if his true reason for the stop is motivated by something other than the traffic offense itself.  Id.; United States v. Hill, 195 F.3d 258, 264 (6th Cir. 1999).

The Court concludes that Officer Anderson had probable cause to make the traffic stop based on the Impala's excessive speed on I-24, even if his subjective intent in stopping the Impala may have been to investigate another incident that occurred a week earlier. See United States v. Garrido-Santana, 360 F.3d 565, 571 (6th Cir. 2004) (upholding traffic stop where police officer paced speed of vehicle using calibrated speedometer and radar equipment); United States v. Puckett, 422 F.3d 340, 343 (6th Cir. 2005)(upholding traffic stop where officer made reasonable estimate of car's speed); United States v. Stapleton, 10 F.3d 582, (8th Cir. 1993) (upholding traffic stop where troopers paced vehicle traveling 70 to 75 in 65-mile-per-hour zone).  Officer Anderson used a calibrated and certified patrol car speedometer to pace the Impala for approximately two miles at 65 miles per hour in a posted 55-

7

mile-per-hour speed zone. Driving at a speed higher than the posted speed limit on an interstate highway violates Tennessee law. Tenn. Code Ann. § 55-8-152. Therefore, probable cause supported Officer Anderson's traffic stop. See␣Whren, 517 U.S. at 810; Hill, 195 F.3d at 264.

Further, Officer Anderson had probable cause and authority to arrest the Defendant during the traffic stop after the Defendant admitted that he was driving without a valid driver's license. Tenn. Code Ann. § 55-50-351(a). Rather than submit to the officers' lawful demands, the Defendant resisted arrest and assaulted one if not both police officers. Officer Anderson and Officer Akin had authority to arrest Defendant for those offenses as well. Tenn Code Ann. § 39-16-602(a); §§ 39-13-101 & 102.

Any and all evidence taken from the Defendant following Officer Anderson's decision to arrest the Defendant for driving without a license, including the Ruger .45 caliber pistol, was lawfully seized and is admissible in evidence. The Court finds it unnecessary to discuss any further the testimony and exhibits concerning the force used by the parties at the time of the Defendant's arrest and any injuries sustained by the parties during the melee. Such matters are not relevant to the Court's legal analysis on the existence of probable cause to support the traffic stop.

8

### III. CONCLUSION

For the reasons stated, Defendant's Motion to Suppress Evidence (Docket Entry No. 21), will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE